UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JERRY W. MOORE,

                Plaintiff,

       v.

CAPITAL REALTY GROUP, INC., *et al.*,

                Defendants.

_____

          21-CV-1099-LJV
          DECISION & ORDER

The *pro se* plaintiff, Jerry W. Moore, has filed two motions for preliminary injunctions related to his tenancy at the St. John Tower Apartments complex.  Docket Items 5, 12.  In his first motion for a preliminary injunction, Moore seeks to enjoin defendants Felicia Pryor[1] and Capital Realty Group, Inc. ("Capital Realty"), from terminating his lease and then instituting eviction proceedings against him.  Docket Item 5 at 2.  In his second motion for a preliminary injunction, Moore seeks to enjoin the defendants from installing "new patio sliding doors" in his apartment unit, which Moore says prevent him from using his apartment balcony.  Docket Item 12.  No defendant has responded to Moore's motions.

For the reasons that follow, Moore's motions for preliminary injunctions are denied.

_____

[1] Moore identified this defendant as "Felecia" Pryor in his complaint, *see* Docket Item 1 at 1; his subsequent filings clarify that her name is spelled "Felicia" Pryor, *see* Docket Item 12 at 9.  The Clerk of the Court shall correct the caption accordingly.

## **FACTUAL BACKGROUND**

The complaint in this case alleges violations of, among other things, the Fair Housing Act ("FHA") and the Americans with Disabilities Act ("ADA") at the St. John Tower Apartments.  Docket Item 1.  This Court screened those claims on April 7, 2022, and found that Moore's claims against the United States Department of Housing and Urban Development ("HUD") were subject to dismissal but that his other claims could proceed.[2]  Docket Item 4.

A few days later, Moore filed a motion for a preliminary injunction against Capital Realty and Pryor seeking to stop the termination of his lease and any ensuing eviction proceedings.  Docket Item 5.  In his motion, Moore attached a letter from Pryor, the property manager at the St. John Tower Apartments, notifying Moore that his lease would be terminated effective June 30, 2022, because of his "material non-compliance with and substantial breach of [his] lease."  *Id.* at 8-9.  The letter cites a number of incidents involving Moore at the St. John Tower Apartments, including confrontations with building management as well as "inappropriate[] questions" and "racial slurs" that Moore directed at on-site contractors.  *Id.*

Moore says that the proffered bases for the termination of his lease are false.  In fact, Moore says, the defendants have violated the FHA and the ADA and are retaliating against him by terminating his lease and potentially instituting eviction proceedings.  *Id.*

---

[2] Moore then filed an amended complaint on April 19, 2022, Docket Item 7, and this Court ultimately dismissed Moore's claims against HUD on June 13, 2022, *see* Docket Item 14.  Moore then filed a "motion for leave to file a 'second' amended complaint" and apparently requests that this Court reconsider that decision.  *See* Docket Item 17.  The Court defers ruling on that motion at this time.

2

at 3-7.  More specifically, Moore says that the defendants "[f]abricat[ed] [] false charges of lease violations . . . in order to move for [e]viction for [l]ease [v]iolations," "provoked [Moore] in order to 'bait' him into a confrontation . . . to contend a lease violation for such conduct/behavior," and retaliated against him for raising complaints and filing this lawsuit.  *Id.* at 4-6.

On June 8, 2022, Moore filed a second motion for a preliminary injunction. Docket Item 12.  In his second motion, Moore seeks to stop the installation of "new patio/balcony sliding doors" in his apartment unit.  *Id.* at 1-2.  Moore says that those "new patio sliding doors continue[] to exclude wheelchair-bound tenants[] [from] us[ing] the[ir] balcon[ies] for their enjoyment" because they include a "[three]-inch rise (step) to go onto the balcony" that tenants using wheelchairs cannot surmount.  *Id.* at 1-3 (internal quotation marks omitted).  According to Moore, the "new patio sliding doors are no different than the current patio doors," which apparently have the same three-inch step.  *Id.* at 3 (internal quotation marks omitted).  Therefore, Moore says, "management knows that the new sliding patio/balcony doors w[ill] not allow wheelchair[-]bound tenants access [to their balconies] because the new doors are very similar to the current patio/balcony doors."  *Id.* at 4.

## LEGAL PRINCIPLES

"'A preliminary injunction is an extraordinary remedy never awarded as of right' and 'is one of the most drastic tools in the arsenal of judicial remedies.'"  *Rochester Drug Co-Operative, Inc. v. Hiscox Ins. Co.*, 466 F. Supp. 3d 337, 248 (W.D.N.Y. 2020) (first quoting *Winter v. NRDC*, 555 U.S. 7, 24 (2008); then quoting *Hanson Tr. PLC v. ML SCM Acquisition, Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)).  "A preliminary injunction

3

is an equitable remedy and an act of discretion by the court." *ACLU v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015).  "A party seeking a preliminary injunction must generally show a likelihood of success on the merits, a likelihood of irreparable harm in the absence of preliminary relief, that the balance of equities tips in the party's favor, and that an injunction is in the public interest." *Id.* (citing *Winter,* 555 U.S. at 20).  In the Second Circuit, a court may issue a preliminary injunction where a plaintiff demonstrates "(1) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor, and (2) irreparable harm in the absence of the injunction." *Kelly v. Honeywell Int'l, Inc.*, 933 F.3d 173, 183-84 (2d Cir. 2019) (quoting *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 116 (2d Cir. 2009)).

"A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Rochester Drug Co-Operative*, 466 F. Supp. 3d at 349 (quoting *Faiveley Transp.*, 559 F.3d at 118).  "To establish irreparable harm, a party seeking preliminary injunctive relief must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (internal quotation marks omitted).  "And[] irreparable harm must be shown to be actual and imminent, not remote or speculative." *Id.*

**DISCUSSION**

Moore seeks to stop the defendants from taking further action to evict him from his apartment and from installing new patio sliding doors in that apartment.  Docket Items 5, 12.  Because Moore has not shown irreparable injury in the absence of a preliminary injunction for either claim, his motions are denied.  *See Monowise Ltd. v. Ozy Media, Inc.*, 2018 WL 2089342, at *1 (S.D.N.Y. May 3, 2018) ("[I]f a party fails to show irreparable harm, a court need not even address the remaining elements of the [preliminary injunction] test.").

I.   **LEASE TERMINATION AND EVICTION**

Moore seeks a preliminary injunction against Capital Realty and Pryor requiring that they "cease and desist [t]ermination of [t]enancy and [e]viction [n]otice procedures." Docket Item 5 at 2.  According to the letter attached to Moore's motion, the St. John Tower Apartments management has "request[ed] that [he] vacate [his] apartment and return [his] keys . . . no later than midnight on June 30, 2022."  *Id.* at 9.  That letter also says that eviction proceedings will begin "if [Moore] d[oes] not vacate the premises by that date."  *Id.*

Some courts have found that the threat of "imminent and actual eviction" is sufficient to establish irreparable harm for a preliminary injunction.  *See Oliva v. Brookwood Coram I, LLC*, 2015 WL 13745439, at *6 (E.D.N.Y. Nov. 30, 2015) (collecting cases), *report and recommendation adopted*, 2016 WL 3637010 (E.D.N.Y. June 30, 2016).  But when tenants have sought to enjoin their possible eviction without a proceeding pending and an "imminent threat of homelessness," courts have found no irreparable harm and therefore have declined to enter a preliminary injunction against

potential eviction. *See, e.g.*, *id.* at *6-8 (finding no irreparable harm where "there is presently no eviction proceeding pending against [the] [p]laintiff" and, regardless, "the commencement of those proceedings would not place [the] [p]laintiff in imminent threat of homelessness"); *Allen v. N.Y.C. Hous. Auth.*, 2010 WL 1644956, at *4 (S.D.N.Y. Apr. 20, 2010) (concluding that "any harm is far from imminent" because "[n]o Housing Court proceeding is currently pending against [the] [p]laintiff and, even if the NYCHA decides to evict [the] [p]laintiff based on the termination of his tenancy, it must first serve him with a notice to vacate, commence a holdover proceeding in Housing Court, and obtain a judgment of possession and a warrant of eviction").

So too here.  Moore does not say that any eviction action is pending against him in state court; indeed, the letter attached to Moore's motion suggests that any action would be filed only after June 30, 2022.  *See* Docket Item 5 at 9.  The mere threat of proceedings that might possibly lead to Moore's eviction at some unknown time in the future therefore does not suffice to show irreparable harm.  *See Oliva*, 2015 WL 13745439, at *7 ("[The plaintiff's] alleged threat of eviction is not imminent and he therefore fails to make the threshold showing necessary to [demonstrate] irreparable harm.").  Moore's first motion for a preliminary injunction, Docket Item 5, therefore is denied.

## II.      INSTALLATION OF THE NEW PATIO SLIDING DOORS

Moore also seeks an injunction preventing the installation of "new patio/balcony sliding doors" in his residence.  Docket Item 12.   "Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiff['s] rights."  *Tripathy v. Lockwood*, 2022 WL 1062883, at *1 (W.D.N.Y. Apr. 8,

2022) (quoting *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985)).   So

"[d]elay in seeking enforcement of those rights[] tends to indicate at least a reduced

need for such drastic, speedy action."  *Id.* (quoting *Citibank*, 756 F.2d at 276); *see also*

*Ingber v. N.Y.C. Dep't of Educ.*, 2014 WL 2575780, at *2 (S.D.N.Y. June 9, 2014)

(noting that a court should "consider a plaintiff's delay in seeking relief when analyzing

whether the plaintiff will suffer irreparable harm in the absence of relief").

Moore says that the "new patio sliding doors have a [three]-inch rise (step) to go

onto the balcony that prevents . . . wheelchair-bound tenants" like Moore from using

their balconies.  Docket Item 12 at 3-4.  By Moore's own telling, however, these "new

patio sliding doors are no different than the current patio doors" in Moore's apartment

unit, *id.* at 3 (internal quotation marks omitted), where Moore has lived since at least the

commencement of this lawsuit.  *Compare* Docket Item 1 at 1 (listing Moore's address on

the complaint), *with* Docket Item 12 at 1 (listing same address on the motion for a

preliminary injunction).  Indeed, the reason why Moore says that "management knows

that the new sliding patio/balcony doors w[ill] not allow wheelchair[-]bound tenants" to

access the balcony is "because the new doors are very similar to the current

patio/balcony doors."  Docket Item 12 at 4.

So Moore has lived with the old "patio sliding doors" in his apartment for some

time now—at the very least, for the eight months between filing his complaint and

seeking a preliminary injunction.  And the only apparent reason behind Moore's request

for extraordinary relief now is based on the scheduled maintenance and replacement of

those doors.  *See* Docket Item 12.  Moore's argument that he faces imminent,

irreparable injury if the new "patio sliding doors" are installed therefore is belied by his

apparent coexistence with the old "patio sliding doors," which by Moore's account have the same shortcomings.  *See Citibank*, 756 F.2d at 277 ("[F]ailure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." (internal quotation marks omitted)).  Because Moore has failed to demonstrate irreparable injury if the new "patio sliding doors" are installed—indeed, because the new doors apparently will not change anything about Moore's access to his balcony—his second motion for a preliminary injunction, Docket Item 12, is denied as well.

## **CONCLUSION**

For the reasons stated above, Moore's motions for preliminary injunctions, Docket Items 5 and 12, are DENIED.

The Court hereby certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore denies leave to appeal as a poor person.  *Coppedge v. United States*, 369 U.S. 438 (1962).


SO ORDERED.

Dated:   June 30, 2022
          Buffalo, New York


         */s/ Lawrence J. Vilardo*
         LAWRENCE J. VILARDO
         UNITED STATES DISTRICT JUDGE